UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 05-80549-CIV-HURLEY/HOPKINS

NEW CENTURY MORTGAGE CORP.,

      **Plaintiff,**

v.

123 HOME LOANS, INC.,

      **Defendant.**

_____/

**MEMORANDUM OPINION CONTAINING FINDINGS OF FACT
AND CONCLUSIONS OF LAW**

    **THIS CAUSE** is before the court following a bench trial in this matter. In accordance with Fed. R. Civ. P. 52(a), and based upon the testimony and evidence presented, the court makes the following

**FINDINGS OF FACT**

*A.*    *The Plaintiff and Its Activities*

    1.    Plaintiff New Century Mortgage Corporation ("New Century") is a California corporation specializing in mortgage services. The plaintiff began its mortgage business ten years ago and is now one of the largest mortgage lenders in the United States.

    2.    The plaintiff sells mortgage loans through mortgage brokers under its registered NEW CENTURY MORTGAGE trademark (the wholesale mortgage business).

    3.    The plaintiff also makes mortgage loans directly to home buyer consumers (the retail mortgage business). Prior to 2004, these loans were marketed and made under the

NEW CENTURY MORTGAGE name.

4.     In March 2004, the plaintiff acquired the Florida corporation Home 1-2-3 Corporation, which had previously built a successful mortgage business under the HOME 123 mark using Bob Vila as its spokesman. As part of this purchase, the plaintiff acquired the HOME 123 mark, its goodwill, three federal trademark registrations for HOME 123, the domain name HOME123.COM, the 1-800-HOME123 telephone number, outstanding loans, and ongoing business operations. *See* Plaintiff's Exhibit 7.

5.     One of the federal trademark registrations that the plaintiff acquired was Registration No. 2,250,525 for the service mark HOME 123 for "financial services, namely, loan financing services." *See* Plaintiff's Exhibit 4. The application that resulted in Registration No. 2,250,525 was filed at the U.S. Patent and Trademark Office ("PTO") on November 6, 1997. *Id.* Registration No. 2,250,525 was issued on June 1, 1999. *See* Plaintiff's Exhibit 1.

6.     Registration No. 2,250,525 reflects the mark as HOME 1-2-3 (HOME 1 [HYPHEN] 2 [HYPHEN] 3). *Id.* However, there are no hyphens in actual use. *See* Plaintiff's Exhibit 10.

7.     In August 2004, the plaintiff filed a combined declaration under Sections 8 and 15 of the Lanham Act indicating that the mark designated in Registration No. 2,250,525 had been in continuous use in interstate commerce for five consecutive years. *See* Plaintiff's Exhibit 4. The PTO accepted and acknowledged the combined declaration on April 19, 2005. *Id.*

2

8.     The plaintiff also owns by assignment U.S. Registration No. 2,559,001 for the mark 1.800HOME123.COM for "financial services, namely, loan financing services, home mortgage lending; home equity loans; home improvement loans, debt consolidation loans and credit reporting services." *See* Plaintiff's Exhibits 5, 7. This application was filed on September 12, 2001. *See* Plaintiff's Exhibit 5. The registration issued April 9, 2002. *See* Plaintiff's Exhibit 2.

9.     The plaintiff also owns by assignment Registration No. 2,631,907 for the mark 1.800HOME123.COM in a stylized form for "financial services, namely, loan financing services, home mortgage lending; home equity loans; home improvement loans, debt consolidation loans and credit reporting services." *See* Plaintiff's Exhibits 6, 7. This application was filed on September 11, 2001. *See* Plaintiff's Exhibit 6. The registration issued on October 8, 2002. *See* Plaintiff's Exhibit 3.

10.    After acquiring the HOME 123 mark, the plaintiff proceeded to market and advertise the retail side of its mortgage business under the HOME 123 name.

11.    The plaintiff has engaged in substantial advertising and marketing activities with respect to the HOME 123 mark, including:

- Television advertising for HOME 123 using Bob Vila (from "This Old House") as a spokesman;

- Television advertising on CNN and other networks;

- Designating HOME 123 as the official mortgage company of NASCAR;

- The HOME123.COM website;

- Extensive direct mailings;

3

- HOME 123 offices and personnel in Florida and elsewhere;

- Print advertising in nationally and locally circulated publications; and

- Advertising and promotional expenditures in the tens of millions of dollars.

12. In addition, the plaintiff utilizes the HOME 123 mark on its business documents and forms. *See* Plaintiff's Exhibit 17.

13. The plaintiff has a HOME 123 office in Miami, Florida.

14. To date, the plaintiff's advertising materials have been in English, but they will soon be available in Spanish in Florida and elsewhere.

15. The plaintiff applied to register the mark CASA123 with the PTO on December 28, 2004. *See* Plaintiff's Exhibit 27. The CASA 123 mark has cleared the opposition period, and the plaintiff intends to begin using the CASA123 mark in Florida and elsewhere. *Id.*

**B.    *The Defendant and Its Activities***

16. Defendant 123 Home Loans, Inc. ("123 Home Loans") is a Florida corporation that specializes in mortgage services.

17. Ms. Eva Chapparo is the chief executive officer of 123 Home Loans.

18. Ms. Chapparo began her career in the mortgage business as a telemarketer in 1992.

19. At that time, Ms. Chapparo began to distribute flyers in south Florida in an effort to generate mortgage leads, which Ms. Chapparo would then sell to mortgage officers.

20. Ms. Chapparo created and distributed these flyers with the help of her brother and sister.

21. These flyers were primarily targeted to the Hispanic community.

4

22. Ms. Chapparo estimated that she distributed approximately 20,000 flyers between 1993 and 1995.

23. Ms. Chapparo became a licensed mortgage broker in Florida in 1999.

24. Ms. Chapparo registered the website www.123homeloans.com in February 1999.

25. The defendant was incorporated under the laws of the state of Florida in March 2000.

26. Currently, Ms. Chapparo serves as the principal mortgage broker for the defendant.

27. The defendant is engaged in substantially similar business operations as the plaintiff's retail mortgage business, as both offer mortgage services to individuals who wish to purchase a home and need a mortgage to do so.

28. On November 16, 2004, the plaintiff sent a cease and desist letter to the defendant. *See* Plaintiff's Exhibit 13. The letter informed the defendant that the plaintiff owned the registered mark HOME 123. *Id.* The letter further stated that the plaintiff considered the defendant's use of 123 HOME LOANS for mortgage services to be a direct infringement of the plaintiff's registered HOME 123 mark. *Id.* The letter concluded by demanding that the defendant immediately cease and desist from all use of the name 123 HOME LOANS. *Id.*

29. Despite this communication, the defendant continues to use the name 123 HOME LOANS in its advertising and on its business documents and forms.

30. www.123homeloans.com remains an active website and displays the name 123 HOME LOANS prominently on its home page.

31. Although Ms. Chapparo testified that she operated under the 123 HOME LOANS name since she began distributing flyers in 1992, the defendant did not submit any

5

corroborating evidence tending to prove that the name 123 HOME LOANS was in use prior to June 1, 1999. Having observed Ms. Chapparo's demeanor on the witness stand and having noted the complete absence of any corroborative documents or testimony, the court finds Ms. Chapparo's testimony that the name 123 HOME LOANS was used commercially prior to June 1, 1999 to be not credible and unworthy of belief.

32. Ms. Chapparo testified from the witness stand about two flyers that incorporated the name 123 HOME LOANS on the face of the documents. Ms. Chapparo purported to distribute these flyers prior to 1999. Although neither of these documents were formally offered into evidence, they were discussed freely before the court. Nonetheless, the court finds Ms. Chapparo's assertion that the name 123 HOME LOANS was used commercially prior to June 1, 1999 to be not credible and unworthy of belief.

Based on the foregoing findings of fact, the court reaches the following

## CONCLUSIONS OF LAW

1. The plaintiff is the owner of federal trademark Registration No. 2,250,525, Registration No. 2,559,001, and Registration No. 2,631,907.

2. A federal trademark registration may become "incontestable" upon the filing of an affidavit indicating that the mark has been in continuous use in interstate commerce for five consecutive years. *See* 15 U.S.C. § 1065.

3. "Once a mark has achieved 'incontestable' status, its validity cannot be challenged on the grounds that it is merely descriptive, even if the challenger can show that the mark

6

was improperly registered initially." *Dieter v. B & H Indus. of Southwest Fla., Inc.*, 880 F.2d 322, 328 (11th Cir. 1989). More generally, "its validity is presumed, subject to certain enumerated defenses." *Id.*

4.  The plaintiff's Registration No. 2,250,525 is "incontestable" within the meaning of the Lanham Act, 15 U.S.C. § 1065.

5.  "A plaintiff seeking to prevail on a trademark infringement claim must show 1) that he had a valid trademark; and 2) that the defendant had adopted an identical or similar mark such that consumers were likely to confuse the two." *Gift of Learning Foundation, Inc. v. TGC, Inc.*, 329 F.3d 792, 797 (11th Cir. 2003) (per curiam).

6.  The plaintiff is the owner of the valid and enforceable service mark HOME 123 for mortgage services. *See Dieter*, 880 F.2d at 328.

7.  The court has considered the following seven factors in assessing whether or not a likelihood of consumer confusion exists: (1) type of mark; (2) similarity of mark; (3) similarity of the products the marks represent; (4) similarity of the parties' retail outlets (trade channels) and customers; (5) similarity of advertising media; (6) defendant's intent; and (7) actual confusion. *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1200 n.22 (11th Cir. 2001).

8.  A "plaintiff is not required to provide evidence of actual confusion in order to prove likelihood of confusion. Instead, actual confusion is merely one of several factors that may be relevant in analyzing whether there is a likelihood of confusion between two marks." *Montgomery v. Noga*, 168 F.3d 1282, 1302 (11th Cir. 1999).

9.  Here, each of the seven factors used to determine likelihood of confusion either

7

strongly favor the plaintiff or do not favor either side.

10.   In particular, the HOME 123 mark is commercially strong through the plaintiff's extensive sales and advertising. *See Jellibeans, Inc. v. Skating Clubs of Ga., Inc.,* 716 F.2d 833, 841 (11th Cir. 1983).

11.   Moreover, HOME 123 and 123 HOME LOANS are similar with respect to their sound, sight, and meaning. *See Frehling Enters., Inc. v. Int'l Select Group, Inc.,* 192 F.3d 1330, 1337 (11th Cir. 1999); *see also In re Nationwide Indus. Inc.,* 6 U.S.P.Q.2d 1882 (T.T.A.B. 1988) (BUST RUST and RUST BUSTER held confusingly similar); *In re General Tire & Rubber Co.,* 213 U.S.P.Q. 870 (T.T.A.B. 1982) (SPRINT STEEL RADIAL and RADIAL SPRINT held confusingly similar); *Bank of America National Trust and Savings Assoc. v. the Am. Nat'l Bank of St. Joseph,* 201 U.S.P.Q. 842 (T.T.A.B. 1978) (BANK OF AMERICA and AMERICABANC held confusingly similar); *Plus Prods. v. Physicians Formula Cosmetics, Inc.,* 198 U.S.P.Q. 111 (T.T.A.B. 1978) (FORMULA PLUS and PLUS FORMULA held confusingly similar); *Carlisle Chem. Works, Inc. v. Hardman and Holden Ltd.,* 434 F.2d 1403 (C.C.P.A. 1970) (COZIR and ZIRCO held confusingly similar); *Royal Crown Cola Co. v. Bakers Franchise Corp.,* 150 U.S.P.Q. 698 (T.T.A.B. 1966), *aff'd,* 404 F.2d 985 (C.C.P.A. 1969) (DIET-RITE and RITE-DIET held confusingly similar).

12.   Finally, both New Century and 123 Home Loans utilize their respective marks to promote the same services in the same marketplace, namely, mortgage services. *See John H. Harland Co. v. Clarke Checks, Inc.,* 711 F.2d 966, 976 (11th Cir. 1983). In

8

addition, both parties utilize substantially similar channels of trade, target the same customers, and use similar methods of advertising. *Id.*

13.    As a result, the court concludes that there is a likelihood of confusion between the plaintiff's HOME 123 mark and the defendant's use of the name 123 HOME LOANS.

14.    Because the plaintiff has proven that it is the owner of the valid service mark HOME 123 and that the defendant's use of 123 HOME LOANS is likely to cause confusion, New Century has established its claims for trademark infringement and unfair competition (counts 1 and 2). *See* 15 U.S.C. §§ 1114, 1125(a).

15.    However, a senior non-registering user may enjoy limited geographic rights to use an otherwise infringing mark if such a user can demonstrate prior use. *See* 15 U.S.C. § 1065.

16.    The elements of the § 1065 prior use defense are: (1) acquisition of trademark rights under state law prior to the date of the incontestable registration; (2) continuance of use of the trademark from that date; and (3) that the prior use is on goods or services which are in issue in the case and infringement is proven. *See, e.g., Cullman Ventures, Inc. v. Columbian Art Works, Inc.,* 717 F.Supp. 96, 113 (S.D.N.Y. 1989).

17.    If the defense is proven, "the extent of the senior user/non-registrant's territory is frozen as of the date of actual registration to the junior user." *Allard Enterprises Inc. v. Advanced Programming Resources Inc.,* 249 F.3d 564, 572 (6th Cir. 2001); *see also* 15 U.S.C. § 1065.

18.    To demonstrate priority of use, the defendant must prove: (1) that it actually adopted and used the mark in commerce prior to the plaintiff's registration date in a manner

9

that sufficiently associated the mark with the defendant's provision of mortgage related services; and (2) that its use of the mark was continuous and uninterrupted. *See Dep't of Parks & Recreation for the State of Cal. v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1125-27 (9th Cir. 2006) (citing *Chance v. Pac-Tel Teletrac*, 242 F.3d 1151, 1157-58 (9th Cir. 2001)); *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1052 (9th Cir. 1999).

19.    The defendant cannot rely on a few instances of use of the mark in the distant past that were "casual" or had "little importance apparently attached to [them]." *Menendez v. Holt*, 128 U.S. 514, 521 (1888).

20.    To the contrary, the litigant attempting to establish priority of commercial use must demonstrate both adoption of the mark and "use in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark." *See Dep't of Parks & Recreation*, 448 F.3d at 1126.

21.    Moreover, "[a] service mark . . . entails use in conjunction with the offering and providing of a service. This makes all the more important the use of the mark in 'sales' or 'advertising' materials of different descriptions." *Lloyds Food Prods., Inc. v. Eli's, Inc.*, 987 F.2d 766, 768 (Fed. Cir. 1993).

22.    Here, the defendant has not demonstrated by a preponderance of the evidence that it used the name 123 HOME LOANS in conjunction with its provision of mortgage services prior to June 1, 1999, the date that New Century's HOME 123 registration issued.   Other than Ms. Chapparo's testimony, the defendant offered no other

10

evidence concerning prior use. In particular, the defendant offered no evidence of actual sales associated with the 123 HOME LOANS name prior to June 1, 1999. The defendant did not produce copies of its business cards or forms bearing the 123 HOME LOANS name, nor did the defendant submit receipts demonstrating that any member of the public engaged in business relations with an entity bearing the 123 HOME LOANS name prior to June 1, 1999. In the absence of such evidence, the court is unable to conclude that the defendant used the 123 HOME LOANS name prior to June 1, 1999 in a sufficiently public manner to identify or distinguish the defendant's services in an appropriate segment of the public mind as those of the adopter of the mark. *See Dep't of Parks & Recreation*, 448 F.3d at 1126; *Brookfield Commc'ns*, 174 F.3d at 1052.

23.     Moreover, although there was testimony that Ms. Chapparo registered the domain name www.123homeloans.com in February 1999, the defendant offered no corroborating evidence on this point. More importantly, the defendant offered no evidence that this website was viewable by the public on that date. Registration of a domain name alone, without proof that the website was accessible by the public, cannot constitute use in a manner sufficient to identify and distinguish the defendant's services such that the relevant purchasing public would associate those services with the defendant. *See, e.g., Chance v. Pac-Tel Teletrac*, 242 F.3d 1151, 1160 (9th Cir. 2001) (holding that the defendant's mailing of 35,000 post cards, which generated 128 responses to its 800 number and no sales could not be considered a first use); *Maritec Indus., Inc. v. Am. Marine Sports, LLC*, 75 U.S.P.Q.2d 1145, 1149 (M.D.

11

Fla. 2004) (defendant's distribution of 4,000 brochures, buying business cards and letterhead with the mark, and meetings with individuals to plan marketing and business strategies were insufficient to establish use of the mark in commerce giving rise to protectable trademark rights).

24.    "Cybersquatting" is the practice of registering well-known brand names as Internet domain names in order to force the rightful owners of the marks to pay for the right to engage in electronic commerce under their own brand name. *See Virtual Works, Inc. v. Volkswagen of America, Inc.*, 238 F.3d 264, 267 (4th Cir. 2001).

25.    A trademark owner asserting a claim for cybersquatting must establish: (1) it has a valid trademark entitled to protection; (2) its mark is distinctive or famous; (3) the defendant's domain name is identical or confusingly similar to, or in the case of famous marks, dilutive of, the owner's mark; and (4) the defendant used, registered, or trafficked in the domain name (5) with a bad faith intent to profit. *See DaimlerChrysler v. The Net Inc.*, 388 F.3d 201, 204 (6th Cir. 2004) *see also* 15 U.S.C. § 1125(d).

26.    In determining whether the defendant had a "bad faith intent to profit," the court has considered the following factors: (1) the trademark or other intellectual property rights of the person, if any, in the domain name; (2) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person; (3) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services; (4) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

(5) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site; (6) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct; (7) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct; (8) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and (9) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous. *See* 15 U.S.C. § 1125(d)(1)(B)(I); *see also DaimlerChrysler*, 388 F.3d at 206-7.

27.   Moreover, a "bad faith intent to profit" shall not be found in any case in which the court determines that the defendant believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful. *See* 15 U.S.C. §

1125(d)(1)(B)(ii).

28.     Here, there is no evidence that the defendant registered or used the domain name www.123homeloans.com with a specific bad faith intent to profit. *See TMI, Inc. v. Maxwell*, 368 F.3d 433, 439 (5th Cir. 2004) (dismissing a cybersquatting claim because the plaintiff failed to demonstrate a bad faith intent to profit on the part of the defendant). Thus, the plaintiff's claim for cybersquatting (count 3) fails.

29.     The Lanham Act "confers upon the district court a wide scope of discretion to determine the proper relief due an injured party." *Burger King Corp. v. C. R. Weaver*, 169 F.3d 1310, 1321 (11th Cir. 1999).

30.     The plaintiff is entitled to an injunction enjoining the defendant from further infringement of its registered HOME 123 mark. *See* 15 U.S.C. § 1116.

31.     In addition, the plaintiff is entitled to recover the defendant's profits and the costs of this action. *See* 15 U.S.C. § 1117; *see also Burger King Corp. v. Mason*, 855 F.2d 779, 781 (11th Cir. 1988).

32.     The Lanham Act provides for an award of attorney fees to the prevailing party in "exceptional cases." *See* 15 U.S.C. § 1117. An "exceptional case" is one that can be characterized as oppressive, fraudulent, malicious, or willful on the part of the litigants. *See S Indus., Inc. v. Ecolab, Inc.*, 1999 U.S. Dist. LEXIS 3484, *24-26 (N.D. Ill. Mar. 12, 1999).

33.     After reviewing the applicable law and the record in this case, the court concludes that this is not an "exceptional" case meriting an award of attorney fees to the plaintiff.

Memorandum Opinion Containing Findings of Fact and Conclusions of Law
New Century Mortgage Corp. v. 123 Home Loans, Inc.
Case No. 05-80549-CIV-HURLEY/HOPKINS

## DECRETAL PROVISIONS.

For the reasons stated herein, it is hereby **ORDERED** and **ADJUDGED**:

1.  The plaintiff's claims for federal trademark infringement (count 1) and federal unfair

     competition (count 2) are **GRANTED**.

2.  The plaintiff's claim for cybersquatting (count 3) is **DENIED**.

3.  The defendant's counterclaim is **DENIED**.

4.  A final judgment and permanent injunction shall be issued by separate order.

5.  Within **TWENTY (20) DAYS** of the date of entry of this order, the plaintiff may file

     a motion for an accounting of the defendant's profits and/or to tax costs.

**DONE** and **SIGNED** in chambers at West Palm Beach, Florida this _16_ day of

November, 2006.

Daniel T. K. Hurley
United States District Judge

*Copies provided to counsel of record*

For updated court information, visit unofficial Web site
at http://us.geocities.com/uscts